IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

J.N.J.C.,
by next friend Laurie Tye,

    Plaintiff,

v.

DANIEL COOPER,
in his personal capacity,

AARON DILLHOFF,
in his personal capacity,

ANDREW VALERI,
in his personal capacity,

ALEX WICKETTS,
in his personal capacity,

AARON STICH,
in his personal capacity,

And

CITY OF KENOSHA, WISCONSIN,

    Defendants.

Case No. 2:16-cv-00301

## COMPLAINT

COMES NOW Plaintiff J.N.J.C., by next friend Laurie Tye, by his attorney, William F. Sulton, Esq., of the law firm of Peterson, Johnson & Murray, S.C., and files this complaint against Defendants Police Sergeants Daniel Cooper and Aaron

Dillhoff, Police Officers Andrew Valeri, Alex Wicketts and Aaron Stich, and the City of Kenosha, Wisconsin.

## INTRODUCTION

1. This civil action seeks an award of money damages against defendants for their assault on J.N.J.C., a minor. This action also seeks an award of money damages for the unlawful arrest, jailing and prosecution of J.N.J.C. This action is brought under 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

## THE PARTIES

2. J.N.J.C. is a minor boy. J.N.J.C. is an African-American. At all relevant times, he has lived in the City and County of Kenosha, Wisconsin.

3. Laurie Tye ("Tye") is the next friend of J.N.J.C. under Fed.R.Civ.P. 17(c)(2).

4. Police Sergeant Daniel Cooper ("Cooper") is employed by the City of Kenosha, Wisconsin. He is being sued in his personal capacity. Sergeant Cooper is white. At all relevant times, he has worked in the City of Kenosha, Wisconsin.

5. Police Sergeant Aaron Dillhoff ("Dillhoff") is employed by the City of Kenosha, Wisconsin. He is being sued in his personal capacity. Sergeant Dillhoff is white. At all relevant times, he has worked in the City of Kenosha, Wisconsin.

6. Police Officer Andrew Valeri ("Valeri") is employed by the City of Kenosha, Wisconsin. He is being sued in his personal capacity. Officer Valeri is white. At all relevant times, he has worked in the City of Kenosha, Wisconsin.

7. Police Officer Alex Wicketts ("Wicketts") is employed by the City of Kenosha, Wisconsin. He is being sued in his personal capacity. Officer Wicketts is white. At all relevant times, he has worked in the City of Kenosha, Wisconsin.

8. Police Officer Aaron Stich ("Stich") is employed by the City of Kenosha, Wisconsin. He is being sued in his personal capacity. Officer Stich is white. At all relevant times, he has worked in the City of Kenosha, Wisconsin.

9. City of Kenosha, Wisconsin ("Kenosha"), is a municipal government located in the Eastern District of Wisconsin.

## JURISDICTION AND VENUE

10. This court has jurisdiction over this action under 28 U.S.C. §1331 because the claims in this complaint arise under 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

11. This court also has jurisdiction under 28 U.S.C. §1343(a)(3) because the claims in this complaint seek damages for the deprivation, under color of state law, of rights, privileges and immunities secured by the U.S. Constitution and the laws of the United States.

12. This court also has jurisdiction under 28 U.S.C. §1343(a)(4) because the claims in this complaint seeks damages under acts of Congress.

13. Venue in this court is proper under 28 U.S.C. §1391(b)(1) because the defendants reside within the Eastern District of Wisconsin.

14. Venue in this court is also proper under 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred in the Eastern District of Wisconsin.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15. At all times relevant to the matters in this complaint, Officers Valeri, Wicketts and Stich and Sergeants Cooper and Dillhoff were acting under color of state law.

16. On August 24, 2015, a dispatcher reported that two girls were fighting in Columbus Park in Kenosha.

17. Officer Wicketts went to the park and radioed to other officers that he saw girls running away from the park and that he did not see a fight.

18. Nevertheless, Officer Wicketts zeroed in the lone African-American girl he saw running. Even though Officer Wicketts was in a squad car, he was unable to stop the girl.

19. While Officer Valeri and Sergeant Cooper were on their way to the park, they heard Officer Wicketts say that he did not see fighting.

20. When Officer Valeri and Sergeant Cooper arrived at the park, they saw J.N.J.C. and D.J.T. (a minor African-American boy).

21. Sergeant Cooper walked over to D.J.T. and slammed him on the ground.

22. While D.J.T. was on the ground, Sergeant Cooper began punching D.J.T. in the head.

23. Sergeant Cooper also punched D.J.T. in the neck, back and shoulder.

24. While D.J.T. was on the ground, being punched by Sergeant Cooper, Officer Valeri jumped on D.J.T. and began punching D.J.T. in the ribs.

25. Officer Valeri then handcuffed D.J.T.

26. Officer Valeri hit D.J.T. so hard that Officer Valeri's wrist was hurt.

27. While Sergeant Cooper and Officer Valeri were beating D.J.T., J.N.J.C. and S.W. (a minor white girl) walked over to D.J.T.

28. J.N.J.C. and S.W. pleaded with Sergeant Cooper and Officer Valeri to stop beating D.J.T.

29. As J.N.J.C. and S.W. were pleading with Sergeant Cooper and Officer Valeri, Officer Wicketts walked over and punched J.N.J.C. in the face.

30. Officer Wicketts then grabbed J.N.J.C. by the neck and slammed J.N.J.C. to the ground.

31. While J.N.J.C. was on the ground, Officer Wicketts began punching J.N.J.C. in the head.

32. Officer Wicketts then began kneeing J.N.J.C. in the head.

33. Officer Wicketts also kneed J.N.J.C. in the shoulder, side and legs.

34. As Officer Wicketts was beating J.N.J.C., Sergeant Cooper jumped on J.N.J.C. and began punching J.N.J.C.

35. Sergeant Cooper also performed a pressure hold on J.N.J.C.

36. As Officer Wicketts and Sergeant Cooper were beating J.N.J.C., Officer Stich walked over assisted in the beating.

37. Officers Wicketts and Stich and Sergeant Cooper knowingly arrested J.N.J.C. without probable cause.

38. Officers Wicketts and Stich knowingly jailed J.N.J.C. without probable cause.

39. Officer Wicketts knowingly made a juvenile referral against J.N.J.C. without probable cause.

40. Because of the false statements in Officer Wicketts's referral, a delinquency petition was filed against J.N.J.C.

41. At the time Officer Wicketts put his hands on J.N.J.C., Officer Wicketts knew that he did not have reason to suspect that J.N.J.C. had committed a crime or was about to commit a crime.

42. At the time that Officer Wicketts punched J.N.J.C. in the face, Officer Wicketts knew that his use of force was unreasonable.

43. At the time that Officer Wicketts slammed J.N.J.C. on the ground, Officer Wicketts knew that his use of force was unreasonable.

44. At the time that Officer Wicketts punched J.N.J.C. in the head while he was on the ground, Officer Wicketts knew that his use of force was unreasonable.

45. At the time that Officer Wicketts kneed J.N.J.C. in the head while he was on the ground, Officer Wicketts knew that his use of force was unreasonable.

46. At the time that Officer Wicketts hit J.N.J.C. in other parts of his body while he was on the ground, Officer Wicketts knew that his use of force was unreasonable.

47. At the time that Sergeant Cooper hit J.N.J.C. while he was on the ground, Sergeant Cooper knew that his use of force was unreasonable.

48. At the time that Officer Stich put his hands on J.N.J.C., Officer Stich knew that his use of force was unreasonable.

49. Officers Wicketts and Stich and Sergeant Cooper knew that they did not have probable cause to arrest J.N.J.C. at the time they arrested him.

50. A reasonable officer in Officer Valeri's position would have taken steps to stop the assault on J.N.J.C. by Officers Wicketts and Stich and Sergeant Cooper. Officer Valeri's decision not to stop Officers Wicketts and Stich and Sergeant Cooper was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

51. A reasonable officer in Officer Valeri's position would have taken steps to release J.N.J.C. from the unlawful arrest by Officer Wicketts and Stich and Sergeant Cooper. Officer Valeri's decision not to stop Officer Wicketts and Stich and Sergeant Cooper was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

52. A reasonable officer in Officer Valeri's position would have reported Officers Wicketts and Stich and Sergeant Cooper for misconduct. Officer Valeri's decision to do nothing was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

53. Sergeant Dillhoff was the supervisor in relation to the arrest of J.N.J.C. and reviewed the reports of Officers Valeri, Wicketts, Stich and Sergeant Cooper.

54. A reasonable supervisor in Sergeant Dillhoff's position would have known that Officers Wicketts and Stich and Sergeant Cooper did not have probable cause to arrest J.N.J.C.

55. A reasonable supervisor in Sergeant Dillhoff's position would have reviewed the video recordings of J.N.J.C.'s arrest.

56. Exhibit A is the dash camera footage from Officer Valeri's squad car of Officers Wicketts and Stich and Sergeant Cooper's beating J.N.J.C.

57. A reasonable supervisor in Sergeant Dillhoff's position would have interviewed Officers Valeri, Wicketts and Stich and Sergeant Cooper.

58. A reasonable supervisor in Sergeant Dillhoff's position would have reported Officers Valeri, Wicketts and Stich and Sergeant Cooper for misconduct. Sergeant Dillhoff's decision not to report Officers Valeri, Wicketts and Stich and Sergeant Cooper was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

59. A reasonable supervisor in Sergeant Dillhoff's position would have disciplined Officers Valeri, Wicketts and Stich and Sergeant Cooper. Sergeant Dillhoff's decision not to discipline Officers Valeri, Wicketts and Stich and Sergeant Cooper was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

60. A reasonable supervisor in Sergeant Dillhoff's position would have taken steps to have J.N.J.C. released from custody. Sergeant Dillhoff's decision not to release J.N.J.C. from custody was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

61. A reasonable supervisor in Sergeant Dillhoff's position would have taken steps to prevent the filing of a delinquency petition against J.N.J.C. Sergeant

Dillhoff's decision not to prevent the filing of the petition was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

62. A reasonable supervisor in Sergeant Dillhoff's position would have taken steps to have the delinquency petition filed against J.N.J.C. dismissed. Sergeant Dillhoff's decision to do nothing was intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

63. Officer Wicketts caused a delinquency petition to be filed against J.N.J.C.

64. At the time that Officer Wicketts caused the delinquency petition to be filed against J.N.J.C., Officer Wicketts knew that there was no probable cause for the petition.

65. At the time that Officer Wicketts caused the delinquency petition to be filed, Officer Wicketts knew that his allegations were false.

66. Officer Wicketts trumped up the charges in the delinquency petition against J.N.J.C. to cover up his unlawful actions and the unlawful actions of Officers Valeri and Stich and Sergeant Cooper.

67. The Circuit Court for Kenosha County dismissed the frivolous delinquency petition filed against J.N.J.C.

### FIRST CAUSE OF ACTION: DEPRIVATION OF FOURTH AMENDMENT RIGHTS AGAINST OFFICERS WICKETTS AND STICH AND SERGEANT COOPER

68. J.N.J.C. incorporates here all other paragraphs in this complaint.

69. The Fourth Amendment to the U.S. Constitution prohibits law enforcement officers from arresting citizens without probable cause. The Fourth Amendment also prohibits law enforcement officers from using unreasonable force. 42 U.S.C.

§1983 provides a private cause of action against law enforcement officers for acts in contravention of the Fourth Amendment.

70. Officers Wicketts and Stich and Sergeant Cooper arrested J.N.J.C.

71. There was no probable cause to arrest J.N.J.C.

72. At that time that Officers Wicketts and Stich and Sergeant Cooper arrested J.N.J.C., they knew that there was no probable cause.

73. Officers Wicketts and Stich and Sergeant Cooper used force when they arrested J.N.J.C.

74. The force used against J.N.J.C. by Officers Wicketts and Stich and Sergeant Cooper was unreasonable.

75. The force used against J.N.J.C. by Officers Wicketts and Stich and Sergeant Cooper amounted to punishment.

76. At that time that Officers Wicketts and Stich and Sergeant Cooper used force against J.N.J.C., they knew that the use of force was unreasonable.

77. As a direct and foreseeable result of the unlawful conduct of Officers Wicketts and Stich and Sergeant Cooper, J.N.J.C. has suffered damages, without limitation to physical pain and suffering and emotional distress.

78. J.N.J.C. requests relief as hereinafter provided.

SECOND CAUSE OF ACTION:
DEPRIVATION OF FOURTEENTH AMENDMENT RIGHTS
AGAINST OFFICERS WICKETTS AND STICH AND SERGEANT COOPER

79. J.N.J.C. incorporates here all other paragraphs in this complaint.

80. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits law enforcement officers from using excessive force that

amounts to punishment. 42 U.S.C. §1983 provides a private cause of action against law enforcement officers that use excessive force in contravention of the Due Process Clause.

81. The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from singling out citizens for punishment. 42 U.S.C. §1983 provides a private cause of action against law enforcement officers that single out citizens for punishment in contravention of the Equal Protection Clause.

82. Officers Wicketts and Stich and Sergeant Cooper's use of force against J.N.J.C. was conscience-shocking.

83. Officers Wicketts and Stich and Sergeant Cooper's used force against J.N.J.C. with the intent to cause harm to J.N.J.C.

84. Officers Wicketts and Stich and Sergeant Cooper's use of force was unrelated to any legitimate law enforcement objective.

85. Officers Wicketts and Stich and Sergeant Cooper's decisions to arrest and use force against J.N.J.C. was motivated by racial animus.

86. Officer Wicketts' decision to refer J.N.J.C. for delinquency charges was motivated by racial animus.

87. Officers Wicketts and Stich and Sergeant Cooper's decisions lacked a rational basis in fact or law.

88. Officers Wicketts and Stich and Sergeant Cooper intentionally treated J.N.J.C. differently from others similarly situated and there is no rational basis for the difference in treatment.

89. Officers Wicketts and Stich and Sergeant Cooper's singled out J.N.J.C. for punishment because they did not like him and in retaliation for J.N.J.C.'s complaints about Officer Valeri and Sergeant Cooper's beating of D.J.T.

90. As a direct and foreseeable result of the unlawful conduct of Officers Wicketts and Stich and Sergeant Cooper, J.N.J.C. has suffered damages, without limitation to physical pain and suffering and emotional distress.

91. J.N.J.C. requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION:
### DEPRIVATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS AGAINST OFFICER VALERI AND SERGEANT DILLHOFF

92. J.N.J.C. incorporates here all other paragraphs in this complaint.

93. Officer Valeri witnessed Officers Wicketts and Stich and Sergeant Cooper beating J.N.J.C.

94. Officer Valeri had a duty to stop the beating of J.N.J.C.

95. Officer Valeri was in a position to stop the beating of J.N.J.C. and chose to do nothing.

96. Officer Valeri witnessed Officers Wicketts and Stich and Sergeant Cooper arrest J.N.J.C.

97. Officer Valeri knew that there was no probable cause for the arrest of J.N.J.C.

98. Officer Valeri had a duty to stop the arrest of J.N.J.C.

99. Officer Valeri was in a position to stop the arrest of J.N.J.C. and chose to do nothing.

100. Officer Valeri knew that the actions of Officers Wicketts and Stich and Sergeant Cooper were unlawful.

101. Officer Valeri had a duty to report Officers Wicketts and Stich and Sergeant Cooper's misconduct.

102. Officer Valeri was in a position to report the misconduct of Officer Wicketts and Stich and Sergeant Cooper and chose to do nothing.

103. Officer Valeri's decisions not to intervene in the beating and arrest of J.N.J.C. was motivated by racial animus and was in retaliation for J.N.J.C's complaints about the beating of D.J.T.

104. Sergeant Dillhoff had a duty to supervise Officers Valeri, Wicketts and Stich and Sergeant Cooper.

105. Sergeant Dillhoff knew that Officers Wicketts and Stich and Sergeant Cooper arrested and used force against J.N.J.C.

106. Sergeant Dillhoff knew that J.N.J.C. was jailed.

107. Sergeant Dillhoff was in a position to investigate the arrest of J.N.J.C.

108. Sergeant Dillhoff knew that Officer Wicketts made a referral for delinquency charges against J.N.J.C.

109. Sergeant Dillhoff knew or should have known that J.N.J.C.'s arrest was without probable cause.

110. Sergeant Dillhoff knew or should have known that the use of force against J.N.J.C. was unreasonable.

111. Sergeant Dillhoff knew or should have known that Officer Wicketts' referral was for delinquency charges was without probable cause.

112. Sergeant Dillhoff had the opportunity to report Officers Valeri, Wicketts and Stich and Sergeant Cooper's misconduct and chose to do nothing.

113. Sergeant Dillhoff had the opportunity to discipline Officers Valeri, Wicketts and Stich and Sergeant Cooper and chose to do nothing.

114. Sergeant Dillhoff's would have intervened in the case of a similar situated citizen.

115. As a direct and foreseeable result of the unlawful conduct of Officer Valeri and Sergeant Dillhoff, J.N.J.C. has suffered damages, without limitation to physical pain and suffering and emotional distress.

116. J.N.J.C. requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION: DEPRIVATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS AGAINST CITY OF KENOSHA

117. J.N.J.C. incorporates here all other paragraphs in this complaint.

118. It is obvious that without adequate training, law enforcement officers will commit civil and constitutional violations.

119. It is obvious that without adequate supervision, evaluation and follow up instruction, law enforcement officers will commit civil and constitutional violations.

120. It is obvious that without adequate discipline, law enforcement officers will commit civil and constitutional rights violations.

121. Kenosha failed to adequately train Officers Valeri, Wicketts and Stich and Sergeant Cooper on the legal standards applicable to arrests. Kenosha also failed to

adequately train Officers Valeri, Wicketts and Stich and Sergeant Cooper on the legal standards applicable to using force.  Kenosha further failed to adequately supervise Officers Valeri, Wicketts and Stich and Sergeant Cooper in the field.  Kenosha's failures were intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

122.   Kenosha failed to adequately train and supervise Officer Valeri and Sergeant Dillhoff on their duty to stop other law enforcement officers from committing civil and constitutional violations.  Kenosha further failed to adequately train and supervise Officer Valeri and Sergeant Dillhoff on their duty to report misconduct by other law enforcement officers.  Kenosha also failed to adequately train and supervise Sergeant Dillhoff on his duty to discipline subordinate law enforcement officers.  Kenosha's failures were intentional or deliberately indifferent to J.N.J.C.'s civil and constitutional rights.

123.   Kenosha's deliberately indifferent failure to adopt policies necessary to prevent civil and constitutional violations caused injuries to J.N.J.C.

124.   Kenosha's failures to train and supervise Officers Valeri, Wicketts and Stich and Sergeants Cooper and Dillhoff caused injuries to J.N.J.C.

125.   As a direct and foreseeable result of the unlawful conduct of Kenosha, J.N.J.C. has suffered damages, without limitation to physical pain and suffering and emotional distress.

126.   J.N.J.C. requests relief as hereinafter provided.

# RELIEF REQUESTED

Wherefore, J.N.J.C. respectfully requests that the court enter judgment for him on his complaint against defendants and provide the following relief:

**A.** An order declaring that defendants violated J.N.J.C.'s rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

**B.** An order awarding J.N.J.C. damages for physical pain and suffering, emotional distress and other compensatory damages.

**C.** An order awarding J.N.J.C.'s attorneys' fees, expert fees, taxable costs and disbursements, and punitive damages under 42 U.S.C. §1988 and other applicable laws.

**D.** An order awarding such other and further relief as determined by the court.

# DEMAND FOR TRIAL BY JURY

J.N.J.C. hereby demands a trial by jury on each of his claims under Fed.R.Civ.P. 38(b).

Dated at the law offices of Peterson, Johnson & Murray, S.C., in Milwaukee, Wisconsin, on this 11th day of March, 2016.

>PETERSON, JOHNSON & MURRAY, S.C.
>Attorneys for Plaintiff
>
>
>*/s/ William F. Sulton, Esq.*
>William F. Sulton, Esq.
>State Bar No. 1070600
>788 N Jefferson St Ste 500
>Milwaukee, WI 53202-3763
>Phone: 414-278-8800
>Fax: 414-278-0920
>Email: wsulton@pjmlaw.com

# EXHIBIT A